# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DWAYNE MANNING,** | : | **CIVIL ACTION NO. 1:11-CV-0293** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER FLOCK, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiff Dwayne Manning ("Manning" or "plaintiff"), a federal inmate incarcerated at the Low Security Correctional Institution at Allenwood, White Deer, Pennsylvania ("FCI-Allenwood"), commenced this action on February 11, 2011, asserting <u>Bivens</u>[1] claims pursuant to 28 U.S.C. § 1331, and a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*[2]  (Doc. 1.)  Named as defendants are the following: Officer Flock ("Flock"); Miller; Trimble; Myers, Wolever, Feltman, Krenzel, United States of America; Department of Justice; Bureau of Prisons; Warden Scism; Regional Director Norwood; and Watts.  The <u>Bivens</u> claims include challenges to his conditions of confinement, interference with legal mail, harassment, and retaliation.  (Doc. 1.)  The FTCA claim seeks monetary

---

[1]<u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).  <u>Bivens</u> allows a citizen suffering a compensable constitutional injury to invoke general federal question jurisdiction to obtain an award of monetary damages.

[2]The FTCA confers on district courts subject matter jurisdiction over negligence actions against the United States.

damages for injuries Manning sustained after falling off a step stool when he attempted to gain access to his top bunk.  (Id.)

Ripe for disposition is the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) filed on behalf of all defendants.  (Doc. 11.)  For the reasons set forth below, the motion to dismiss will be granted in part and denied in part and the motion for summary judgment will be granted.

## I.   <u>Motion to Dismiss</u>

Defendants move to dismiss certain portions of plaintiff's complaint.  As to the <u>Bivens</u> claim, which is an implied right of action allowing plaintiffs to sue federal agents acting under color of federal authority for civil rights violations, defendants move to dismiss the claims against them in their official capacities. (Doc. 20, at i.)  They also move to dismiss the <u>Bivens</u> claims against defendants Watts and Norwood for lack of personal involvement.  (Id.)

They seek to dismiss the FTCA claim as to all defendants, except the United States, because the United States is the only proper defendant in an FTCA claim. (Doc. 20, at ii.)  Dismissal was also originally sought on the ground that Manning failed to exhaust his FTCA administrative remedies and failed to articulate an FTCA claim against the United States.  (Id. at ii, 31.)  However, in his opposition to the motion to dismiss, Manning demonstrated exhaustion and clarified his claim under the FTCA.  (Doc. 28, at 22.)  Defendants acknowledge same in their reply brief (Doc. 32, at 12) and, alternatively, seek summary judgment on the ground that

2

the claim is barred by the discretionary function exception to the FTCA.  (Id.; Doc. 33, at 1, fn 1.)

### A.     Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief.  See FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Ashcroft v.

Iqbal, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (explaining that Rule 8 requires more than "an unadorned, the-defendant unlawfully-harmed-me accusation"); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). Thus, courts should not dismiss a complaint for failure to state a claim if it contains "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

Courts are cautioned that because of this liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). However, leave to amend under Rule 15 may be denied in cases of (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; or (4) futility of amendment. See Foman, 371 U.S. at 182; see also Arthur v. Maersk, Inc., 434 F.3d 196, 204-05 (3d Cir. 2006) (stating that "leave to amend must generally be granted unless equitable considerations render it otherwise unjust"); see also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (stating "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a)

4

unless denial can be grounded in bad faith or dilatory motive, truly undue or
unexplained delay, repeated failure to cure deficiency by amendments previously
allowed or futility of amendment") (citations and internal quotation marks omitted);
<u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir.  2000) (summarizing factors to consider
under Rule 15).

### B.   Pertinent Allegations of the Complaint

#### 1.   <u>Bivens Claim</u>

Manning sues all of the defendants in both their individual and official
capacities.  (Doc. 1, at ¶¶ 2-11.)

At some time after July 23, 2010, Manning wrote defendant Norwood, the
"regional director over LSCI Allenwood," a letter explaining that prison officials
were interfering with his pursuit of his administrative remedies.  (Doc. 1, at ¶¶ 10,
32-33.)  Norwood informed him that he must pursue remedies through the prison
system before coming to him.  (<u>Id.</u> at ¶ 33.)  Manning also alleges that on every
instance where he sought relief through the grievance system, "no matter how
much wrong the institution does, Norwood ignores it and goes along with the
institution."  (<u>Id.</u>)

He also alleges that defendant Watts had the opportunity to correct all of the
violations and chose not to investigate.  (Doc. 1, at ¶ 35.)  In addition, he asserts that
Watts violated his due process rights when he failed to timely respond to grievance
appeals.  (<u>Id.</u>)

2.    FTCA Claim

In the caption of his complaint, Manning includes the Administrative Tort

Claim No., TRT-NER-2010-04746.  (Doc. 1, at 1.)  In the opening sentence of his

preliminary statement, he states that this is a civil rights action for damages and

injunctive relief and "compensatory damages" under tort action "28 U.S.C. §§ 1346 .

. . ."  (Id.)  Under the jurisdiction heading, he states that "[t]he Court also has

jurisdiction over Plaintiff's claims of tort action under 28 U.S.C. §§ 1346."  (Id.)

In his request for administrative relief, he claimed that staff improperly

advised him to utilize a stool to access his top bunk causing him to fall and suffer

injury and that the injury could have been avoided if ladders had been provided to

gain access to the top bunks.  (Doc. 29, at 32.)  He submits the December 7, 2010,

decision of the Federal Bureau of Prisons' Regional Counsel denying his request for

administrative relief.  (Doc. 29, at 32.)  This instant action was filed on February 11,

2011.  (Doc. 1.)

### C.    Discussion

#### 1.    Bivens Claim

Bivens is analogous to its statutory cousin, 42 U.S.C. § 1983[3], which allows

federal suits of state agents who commit civil rights violations while acting under

color of state law.  The required elements of a Bivens claim are (1) the conduct

complained of was a person acting under color of law, and (2) the conduct deprived

that person of a right, privilege, or immunity secured by the Constitution.  See, e.g.,

Grohman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (describing elements

of a § 1983 claim).

The doctrine of sovereign immunity precludes a plaintiff from bringing a

Bivens action against a federal agency, See FDIC v. Meyer, 510 U.S. 471, 484-86

(1994). Suits brought against federal officials in their official capacities are to be

treated as suits against the employing government agency.  Will v. Mich. Dep't of

---

[3]Section 1983 of Title 42 of the United States Code offers private citizens a
cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.
The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and
> laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder,
95 F.3d 1199, 1204 (3d Cir. 1996).

State Police, 491 U.S. 58, 71 (1989).  As a result, a <u>Bivens</u> suit brought against an individual federal official acting in his official capacity is barred by the doctrine of sovereign immunity,  <u>See</u> <u>also</u> <u>Chinchello v. Fenton</u>, 805 F.2d 126, 130 n. 4 (3d Cir. 1986) (affirming district court's conclusion that sovereign immunity barred an official-capacity <u>Bivens</u> claim), and the court lacks jurisdiction to hear the claim. <u>See</u> <u>Kabakjian v. United States</u>, 267 F.3d 208, 211 (3d Cir. 2001) (holding that district courts lack jurisdiction to hear claims brought against the United States unless Congress has explicitly waived sovereign immunity)."  Thus, the monetary claims against all defendants in their official capacities are subject to dismissal.

The involvement of defendants Norwood and Watts is limited to the review of Manning's grievances.  The filing of a prison grievance is a constitutionally protected activity.  <u>Robinson v. Taylor</u>, 204 F. App'x. 155, 156-57 (3d Cir. 2006). Although prisoners have a constitutional right to seek redress of grievances as part of their right of access to courts, this right is not compromised by the failure of prison officials to address these grievances.  <u>Booth v. King</u>, 346 F. Supp.2d 751, 761 (E.D.Pa .2004).  This is because inmates do not have a constitutionally protected right to a grievance procedure.  <u>Burnside v. Moser</u>, 138 Fed.Appx. 414, 416 (3d Cir.2005) (citations omitted) (failure of prison officials to process administrative grievance did not amount to a constitutional violation).  Nor does the existence of a grievance procedure confer upon prison inmates any substantive constitutional rights.  <u>Hoover v. Watson</u>, 886 F. Supp. 410, 418-19 (D. Del.), aff'd 74 F.3d 1226 (3d Cir. 1995).  Similarly, the failure to investigate a minor grievance does not raise a

constitutional issue.  Hurley v. Blevins, No. Civ. A. 6:04CV368, 2005 WL 997317 (E.D. Tex. Mar. 28, 2005).

Moreover, participation in the after-the-fact review of a grievance or appeal is not enough to establish personal involvement.  See Rode, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); Croom v. Wagner, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); Ramos v. Pennsylvania Dept. of Corr., 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement); Pressley v. Blaine, No. 01-2468, 2006 U.S. Dist. LEXIS 30151, at *17 (W.D. Pa. May 17, 2006) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."  (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983))).

Because the involvement of defendants Norwood and Watts is limited to their involvement in the grievance procedure, and their after-the fact review of Manning's grievances, the complaint against these defendants will be dismissed.

9

2.    FTCA Claim

Defendants argue that all defendants except the United States should be dismissed because the only proper defendant for purposes of an FTCA claim is the United States of America.  (Doc. 20, at 25.)  The Court agrees that the only proper party is the United States.  See CNA v. United States, 535 F.3d 132, 138 n. 2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."); see 28 U.S.C. § 2679(d).  Consequently, the FTCA claim will be dismissed as to all defendants except the United States.

## II.    **Motion for Summary Judgment**

### A.    **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

10

**B.      Statement of Material Facts**

1.      <u>Bivens Claim</u>

a.      Exhaustion of Administrative Review Procedure

There are a number of claims alleged in the complaint.  Defendants contend

that while some are exhausted, there are a number of claims that are not.  (Doc. 20,

at 11.)  The BOP has a three-level administrative review process that must be fully

exhausted before an inmate can bring an action in federal court.  (Doc. 21, at ¶ 49,

citing 28 C.F.R. § 541.10, *et seq.* (2004).)  The purpose of the process is to allow an

inmate to seek formal review of an issue relating to any aspect of his or her

confinement.  (<u>Id.</u> at ¶ 50, citing 28 C.F.R. § 541.10(a).  If an issue is raised in a

request or appeal that cannot be resolved through the review process, the BOP will

refer the inmate to the appropriate statutorily-mandated procedures.  (<u>Id.</u> at ¶ 51,

citing 28 C.F.R. § 542.10(c).)

In order to exhaust appeals under the administrative review procedure, an

inmate must first informally present his complaint to staff, and staff will attempt to

resolve the matter.  (Doc. 21, at ¶ 52, citing 28 C.F.R. § 542.13(a).)   If the informal

resolution is unsuccessful, then the inmate must execute the appropriate form to

bring the matter to the attention of the warden.  (<u>Id.</u> at ¶ 53, citing 28 C.F.R. §

542.14.)  The warden is then to respond to the inmate's complaint within twenty

calendar days. (<u>Id.</u> at ¶ 54, citing 28 C.F.R. § 542.18.)  If the inmate is dissatisfied

with the warden's response, he may then appeal to the BOP Regional Director

within twenty calendar days.  (<u>Id.</u> at ¶ 55, citing 28 C.F.R. § 542.15(a).)  If the

response of the BOP Regional Director is not satisfactory, the inmate may then appeal to the BOP Central Office within thirty calendar days, which office is the final administrative appeal in the BOP.  (Id. at ¶ 56,citing 28 C.F.R. § 542.15(a).)  An exception is made for appeals of decisions of a discipline hearing officer ("DHO"), which are first raised directly to the BOP Regional Office and then to the BOP Central Office.  (Id. citing 28 C.F.R. §542.14(d)(2).)  No administrative  appeal is considered to have been fully exhausted until rejected by the BOP Central Office. (Id. at ¶ 57, citing 28 C.F.R. § 542.15(a).

In the ordinary course of business, computerized indices are kept of requests for administrative review filed by inmates.  (Doc. 21, ¶ 58.)  On April 18, 2011, a search of BOP records was conducted to determine whether Manning exhausted that administrative process as to each of his claims.  (Id. at ¶ 59.)  The search revealed that Manning fully exhausted the following claims: defendant Flock provided him with improper clothing ("Request for Administrative Remedy" Number ("Adm. No.") 584758); defendant Flock improperly pat searched him (Adm. No. 593775; defendant Flock improperly confiscated items from his cell (Adm. No. 608913); defendant Myers retaliated against him for filing grievances and by changing his job assignment (Adm. No. 590134); defendant Myers refused to give him a grievance form until a pending grievance was answered (Adm. No. 592078); defendant Myers retaliated against him for filing grievances by assigning him to a top bunk (Adm No. 592084); defendants Miller and Trimble improperly refused to accept legal mail (Adm. No. 589385); defendant Feltman used profanity and tried to

discourage him from filing a complaint of assault by defendant Trimble (Adm. No. 592076).  (Doc. 21, at pp. 12-15.)

Conversely, the search of the computerized indices confirmed that Manning did not fully administratively exhaust the following claims: that defendant Scism slapped Manning's books on the floor and ordered his placement in the SHU in retaliation for filing a grievance; defendant Krenzel threatened him and was confrontational; defendant Myers discouraged him from filing a grievance and told staff and inmates he was filing grievances; defendant Myers refused to give him administrative appeal forms; all claims against defendant Wolever.  (Doc. 21, at ¶ 80; Doc. 20-2, at 29-44.)  In response, Manning makes the general statement that he "exhausted all remedies which he was allowed to.  In ceratain [sic] remedies staff would not allow Plaintiff remedies to go forward due to the nature of the complaints."  (Doc. 27, at ¶ 16.)  He also states that he fully exhausted all avenues of review concerning "Remedy #592915-R1" and "Remedy #624730-A1."  There is no record of Adm. No. 592915.  It appears that Manning is referring to Adm. No. 592015.  (Doc. 30-2, at 37-38.)  This administrative complaint was not appealed to the Central Office.  (Doc. 20-2, at 37-38.)  The complaint contained in Adm. No. 624730, which involves a January 12, 2011, confiscation of property, was fully exhausted, but is not raised in the complaint.  (Doc. 29, at 46-51.)

13

b.     Retaliation

Manning alleges that on September 3, 2010, Flock searched his cell and, in

retaliation for filing grievances against her, she improperly confiscated items from

his cell.   In response, the warden explained the following:

> This responds to your Request for Administrative Remedy
> regarding items that were removed during a mass
> shakedown.
>
> During the mass shakedown in question on September 3,
> 2010, numerous staff participated in searching and
> removing any contraband that did not conform to the
> established property guidelines or limits.  Any institutional
> property that was removed from your possession did not
> conform to the established guidelines.
>
> Due to the fact that all inmates were removed from the
> housing unit during the search, it is not discernable which
> staff member searched specific areas.
>
> Accordingly, your Request for Administrative Remedy is
> denied.

(Doc. 20-2, at 18.)

Manning submits the declaration of Shamar Tucker ("Tucker"), his cellmate

at the time.  Tucker declares that Flock entered the cell on September 3, 2010, and

only removed items belonging to Manning.  (Doc. 29, at 10-11, ¶ 4.)  He states that

"Flock chose Manning because he had filed grievances against her prior to the

search."  (Id.)

Manning also alleges that defendant Myers retaliated against him for filing

grievances by moving him to difference cells and beds and by changing his job

assignment.  Defendant Myers declares that Manning was assigned to different cells

14

and beds from the time he arrived at LSCI Allenwood.  (Doc. 21, ¶ 81.)  From March

30, 2010 through May 6, 2010, Manning was assigned to an upper bunk (G07-511U).

(Doc. 21, ¶ 82.)  On May 6, 2010, he was changed to a lower bunk (G07-511L.)  Id.  On

May 20, 2010, his bunk assignment was changed to an upper bunk (G07-621U).  Id.

The change in Manning's bunk assignment was done according to institution

seniority, a manner Counselor Myers considers to be equitable and fair in making

lower bunk assignments.  (Id. at ¶ 83.)

        In addition to his own declaration, Manning submits declarations from

several inmates on this issue.  Manning states that Myers told him that he was

moved from the lower bunk to the upper bunk on May 20, 2010, because he likes

filing frivolous grievances.  (Doc. 29, at 21-22, ¶¶ 5-7.)  Manning's cellmate, Tucker,

states that on May 20, 2010, Manning was moved to the top bunk even though the

bottom bunk was empty and that "[e]veryone knew Meyers [sic] was out to get

Manning because he would tell inmates this."  (Id. at 11, ¶ 5.)  Derrick Wilson

("Wilson"), an inmate incarcerated at LSCI Allenwood states that he overheard

Myers tell Manning that he was moved from cell 51 lower bunk to cell 62 upper

bunk because he filed frivolous grievances against him.  (Id. at 27, ¶ 4.)  Inmate

Kevin Dyson ("Dyson") states that "Meyers took it upon himself to move Manning

to the front cell on the top bunk as retaliation even though the bottom bunk was

empty."  (Id. at 15, ¶ 3.)

        On May 5, 2010, Manning's job assignment was changed from the Recreation

Department to the Food Services Department.  (Doc. 21, at ¶ 84.)  Defendant Myers

declares that the change in Manning's job assignment was made as a result of a request from Food Services for additional workers.  (Id. at ¶ 85.)  Defendant Myers contacted the Recreation Department and requested a list of inmates assigned to their detail who could be considered for prospective Food Service employment.  (Id. at ¶ 86.)  Manning was included on this list. (Id. at ¶ 87.)

According to inmate Wilson, when Manning confronted Myers about his change in job assignment, Myers responded "The kitchen needed some people and since you like to file papers I chose you." (Doc. 29, at 28, ¶ 8.)  Manning recounts the same conversation in his declaration.  (Doc. 29, at 20, ¶ 4.)

c.      Harassment

Manning filed two separate grievances against defendant Flock asserting that she harassed him by providing him with improper size clothing and improperly pat searching him.  (Doc. 21, ¶¶ 62-65.)  With regard to the laundry claim that arose on or about March 30, 2010, he was informed that if he received clothing that does not fit, he is to submit a request to the laundry department during open house hours. (Doc. 20-2, at 14.)  On the issue of the pat search that occurred on or about May 26, 2010, during the final level of appeal, it was concluded that "[t]he staff member conducted a thorough pat search to detect contraband and to ensure the security of the institution in accordance to BOP policy."  (Id. at 16.)

He also filed a grievance against defendant Feltman stating that the "staff member used abusive language toward him and attempted to harass him into dropping his complaint.  In response, the Central Office informed Manning that the

16

BOP takes allegations of staff misconduct seriously and, therefore, his allegations were referred to the appropriate department for review. "The result of the investigation and the action taken if any, is not discloseable to you." (Doc. 20-2, at 28.)

### d.   Access to Courts

Manning contends that defendant Myers denied him grievance forms. (Doc. 21,¶¶ 71-72; Doc. 20-2, at 21-22.) He appealed this complaint to final review and, at that time relief was denied because he did not provide any evidence that demonstrated that he was unable to utilize the administrative remedy process. (Doc. 20-2, at 22.)

He also alleges that defendants Miller and Trimble improperly refused to accept his legal mail for failure to properly label the mail. (Doc. 21, at 14.) He appealed the issue to the Central Office, which explained that " with a few exceptions, inmates must place a TRULINCS-generated label on outgoing postal mail. 'If an inmate fails to place the TRULINCS-generate label on outgoing postal mail, the mail is returned to the inmate for proper preparation.'" (Doc. 20-2, at 26.) Further, he was advised that "[y]ou were informed that the TRULINCS mail labels include five data fields that should accommodate any mailing address. You may contact a TRULINCS tutor in the Education Department for assistance. Accordingly, your appeal is denied." (Id.)

Plaintiff filed a request for administrative review raising the issues that defendant Feltman used profanity and discouraged him from filing a complaint

17

against defendant Trimble. (Doc. 20-2, at 27.) During the final level of review he

was notified that allegations of staff misconduct are taken seriously and that his

complaints were referred to the appropriate department for review. (Id. at 28.)

e.      Conditions of Confinement

Manning and two other inmates, Tucker and Dyson state that overcrowding

is a major problem at Allenwood. (Doc. 29, at 12, ¶ 8; at 17, ¶ 6; 23-24, ¶ 9.) The

overcrowding has resulted in poor cell and bathroom conditions, increased

incidents of inmate altercations,  and limited access to various services such as

phones, microwaves, televisions and computers. (Id.)

2.     FTCA

On June 14, 2010, Manning filed Administrative Tort Claim No. TRT-NER-

2010-04746, seeking $900,000, in damages for injuries he allegedly sustained when

he fell off  a stool attempting to climb to a top bunk bed. (Doc. 33, at ¶ 1; Doc. 40, at

1.) The government's response states as follows:

> You seek compensatory damages in the amount of
> $900,000.00 for an alleged personal injury.  Specifically, you
> claim staff improperly advised you to utilize a stool to access
> your top bunk causing you to fall and suffer injury.
>
> After careful review of this claim, I have decided not to offer
> a settlement.  The Bureau of Prisons is not under a duty to
> affix ladders to the upper bunk beds in inmate cells and
> there is no evidence a staff member advised you to use a
> stool.  You continued to receive follow-up medical care for
> your alleged injuries.   Finally, your cell assignment was
> changed based on the needs of the housing unit.  There is
> no evidence to suggest you experienced a compensable loss
> as the result of negligence on the part of any Bureau of
> Prisons employee.  Accordingly, your claim is denied.

> If you are dissatisfied with this decision, you may seek reconsideration from this office or bring an action against the United States in an appropriate United States District Court within six (6) month of the date of this memorandum.

(Id. at ¶ 2; Doc. 29, at 32.)

Frank Strada, Warden of LSCI Allenwood ("Warden Strada"), declares that all beds in the general population units are bunk beds and do not include formal ladders for gaining access to the top bunk. (Doc. 33, ¶ 3.) There are no BOP rules, regulations or policies that govern the use of ladders on bunk beds; such decision are made independently by the administration of each prison. (Id. at ¶¶ 6, 7.) In the past, ladders have not been used at LSCI Allenwood, and Warden Strada intends to continue that practice due to a myriad of security concerns that ladders present. (Id. at ¶¶ 8-12.)

If an inmate believes he has a need for a lower bunk, he can request medical services to issue him a lower bunk pass. (Doc. 33, ¶ 4.) Manning never had a medical slip for a bottom bunk. (Id. at ¶ 14.) If his medical condition warranted it, the medical department would have issued him a medical slip for a bottom bunk. (Id. at ¶¶ 15-16.)

### C.   Discussion

#### 1.   Bivens Claims

##### a.   Exhaustion of Administrative Review Process

Defendants move for summary judgment on the ground that Manning failed to exhaust available administrative avenues with respect to the following claims:

that defendant Scism slapped Manning's books on the floor and ordered his

placement in the SHU in retaliation for filing a grievance; defendant Krenzel

threatened him and was confrontational; defendant Myers discouraged him from

filing a grievance and told staff and inmates he was filing grievances; defendant

Myers refused to give him administrative appeal forms; all claims against defendant

Wolever.  (Doc. 21, at ¶ 80.)  Under the Prison Litigation Reform Act of 1996 (the

"PLRA"), a prisoner is required to pursue all avenues of relief available within the

prison's grievance system before bringing a federal civil rights action concerning

prison conditions.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291(3d

Cir. 2000).  It has been made clear that the exhaustion requirement is mandatory.

See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at

741 (holding that the exhaustion requirement of the PLRA applies to grievance

procedures "regardless of the relief offered through administrative procedures");

Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same).  This "exhaustion requirement

applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or

some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

    In response, Manning makes the general statement that he "exhausted all

remedies which he was allowed to.  In ceratain [sic] remedies staff would not allow

Plaintiff remedies to go forward due to the nature of the complaints."  (Doc. 27, at ¶

16.)  He provides absolutely no support for this statement.  A party opposing

summary judgment must come forth with "affirmative evidence, beyond the

allegations of the pleadings," in support of its right to relief.  Pappas, 331 F. Supp.

2d at 315; FED. R. CIV. P. 56(e).  This evidence must be adequate, as a matter of law,

to sustain a judgment in favor of the non-moving party on the claims.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c),

(e).  Manning has failed to meet his burden.  Consequently, summary judgment will

be granted as to these claims based on Manning's failure to exhaust the

administrative review process.

        b.    Retaliation

Manning alleges retaliation claims against defendants Flock and Myers.  The

First Amendment offers protection for a wide variety of expressive activities.  See

U.S. Const. amend I.  These rights are lessened, but not extinguished in the prison

context, where legitimate penological interests must be considered in assessing the

constitutionality of official conduct.  See Turner v. Safley, 482 U.S. 78, 89 (1987).

Retaliation for expressive activities can infringe upon an individual's rights under

the First Amendment.  See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate

(1) that he was engaged in protected activity; (2) that he suffered an "adverse

action" by government officials; and (3) that there is "a causal link between the

exercise of his constitutional rights and the adverse action taken against him."

Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  The last

Rauser prong requires a prisoner to establish a causal link between the exercise of

his constitutional rights and the adverse action taken against him.  The court employs a burden-shifting regime to determine whether a causal link exists.  The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him.  See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity.  See id.  If defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action.  See id. at 334.

Manning alleges that defendant Flock retaliated against him by giving him ill-fitting clothing, subjecting him to a pat search and confiscating items in his cell, because he is black.  However, since Manning fails to establish that he was engaged in protected conduct at the time, he is unable to meet the first Rauser prong and these claims fail.

He also alleges that Flock confiscated the items in his cell in retaliation for filing a grievance against her.  The first prong of Rauser is met as the submission of grievances is constitutionally protected conduct.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003).  On the issue of adverse action, according to defendants, because his property was removed pursuant to a mass shakedown, it was impossible for them to determine exactly who confiscated his items.  However, Manning submits

the declaration of his cellmate, Tucker, who states that Flock entered the cell on

September 3, 2010, and only removed items belonging to Manning.  (Doc. 29, ¶ 4.)

He states that "Flock chose Manning because he had filed grievances against her

prior to the search."  (Id.)  This is sufficient to meet the second prong.  As to the

third prong, Manning's filing of  two grievances against Flock in the months

immediately preceding the cell search sufficiently establishes a causal link.

The burden then shifts to defendant to prove by a preponderance of the

evidence that they would have taken the same action even in the absence of the

protected activity.  Significantly, the evidence of record establishes that the cell

search and confiscation of property was part of a mass shakedown at the prison and

defendant would have made the same decision absent the protected conduct for

reasons reasonably related to a legitimate penological interest.  This evidence is

undisputed.  Consequently, defendant Flock is entitled to an entry of judgment on

this claim.

We now turn to the retaliation claims against defendant Myers.  Manning

alleges that Myers retaliated against him by changing his cell and bunk

assignments and his job assignment from the recreation department to the food

services department in retaliation for filing grievances.  As noted above, the first

Rauser prong is met as the filing of a prison grievance constitutes protected

conduct.  As to the second prong, to show an "adverse action," the plaintiff must

demonstrate that defendants' actions were "sufficient to deter a person of ordinary

firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.

Supp.2d 520, 535 (E.D.Pa. 2002) (quoting Allah v. Seiverling, 229 F.3d at 225.)

Plaintiff argues that he was subjected to the adverse action of cell and bunk

reassignments.  It is well established that an inmate does not have a constitutional

right to any particular custody or security classification.  Moody v. Daggett, 429 U.S.

78, 88 (1976); Montanye v. Haymes, 427 U.S. 236, 242.  In short, prisoners have no

inherent constitutional right to placement in any particular prison, to any security

classification, or to any particular housing assignment.  See Olim v. Wakinekona,

461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976).  Therefore, the

transfer of Manning from one cell or bunk to another is insufficient to deter a

person of ordinary firmness from exercising his constitutional rights.  Myers is

entitled to summary judgment on this claim.

Likewise, he is entitled to an entry of summary judgment on the job

reassignment claim.  An inmate does not have a constitutionally protected interest

in a prison job assignment.  James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989).

Therefore, in order to establish adverse action, an inmate must have been removed

from his job, or the job reassignment must carry with it a negative impact such as a

lower pay, a less interesting environment or less favorable work conditions that

could deter a prisoner of ordinary firmness from exercising their First Amendment

rights.  See Mitchell, 318 F.3d at 530; see also Baker v. Williamson, No. 07-2220, 2010

WL 1816656, at *6 (M.D.Pa. May 5, 2010).  No such circumstances are present here.

Consequently, plaintiff has not demonstrated adverse action.  However, even if he

had been able to meet the adverse action prong, defendants would still be entitled

to an entry of summary judgment because defendants have offered uncontroverted

evidence that his job reassignment was due to a request for additional workers to

fill positions in the food service department, not in retaliation for the filing of any

grievances.

c.    Harassment

Manning complains that defendants Flock and Feltman used profanity and

verbally harassed him.  Acts of verbal harassment and taunting alone cannot

qualify as constitutional violations.  See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS

31889, at *19, 2005 WL 3338370 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment and

taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction

of pain' under the common meaning of those terms.  'Verbal harassment or

profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it

might seem,' does not constitute the violation of any federally protected right and

therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F.

Supp. 460, 474 (S.D.N.Y. 1998)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS

20951, at *8–9, 2005 WL 2340745 (D.Del. Sept. 26, 2005) ("[M]ere verbal harassment

does not give rise to a constitutional violation[; even if it is] inexcusable and

offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v.

Deer, 240 F.3d 1287, 1291 n. 3 (10th Cir. 2001)); Abuhouran v. Acker, 2005 U.S. Dist.

LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . .

verbal harassment, . . . standing alone, do[es] not state a constitutional claim").

25

Further, mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.  Balliet v. Whitmire, 626 F. Supp. 219, 228–29 (M.D. Pa. 1986) ("[v]erbal abuse is not a civil rights violation . . . ").  Thus, because Manning's various allegations of verbal harassment, however inappropriate and reprehensible they may have been, were unaccompanied by physical acts, defendants are entitled to an entry of summary judgment.

> d.     Access to the Courts

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977).  In order to state a claim for a denial of the right of access to the courts, a plaintiff must also show actual injury.  Lewis v. Casey, 518 U.S. 343 (1996).  The plaintiff must demonstrate that as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action.  Id. at 355.  The "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id.  A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation.  Christopher v. Harbury, 536 U.S. 403 (2002).

Manning has failed to demonstrate that action taken by defendants Myers, Miller, or Trimble caused him an actual injury.  The record is devoid of any evidence that the conduct of defendants resulted in the loss of an arguably

actionable claim against the validity of his sentence under direct or collateral

appeal or a claim challenging his conditions of confinement in a civil rights action.

Defendants are therefore entitled to an entry of summary judgment on this claim.

e.    Conditions of Confinement

"The Cruel and Unusual Punishments Clause of the Eighth Amendment

proscribes 'punishments which are incompatible with the evolving standards of

decency that mark the progress of a maturing society.' " Tillman v. Lebanon Cnty.

Corr. Facility, 221 F.3d 410, 417 (3d Cir. 2000) (footnote omitted) (quoting Estelle v.

Gamble, 429 U.S. 97, 102 (1976)).  In order to establish an Eighth Amendment claim,

a plaintiff must first prove "a sufficiently serious objective deprivation." Tillman,

221 F.3d at 418.  This objective component is narrowly defined. "[C]onditions that

cannot be said to be cruel and unusual under contemporary standards are not

unconstitutional.  To the extent that such conditions are restrictive and even harsh,

they are part of the penalty that criminal offenders pay for their offenses against

society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The Eighth Amendment

does not mandate that prisons be free of discomfort. Hudson v. McMillian, 503 U.S.

1, 9 (1992).  Only "extreme deprivations" are sufficient to make out an Eighth

Amendment claim. Id.  A prisoner must show that the condition, either alone or in

combination with other conditions, deprived him of "the minimal civilized measure

of life's necessities," or at least a "single, identifiable human need." Wilson v.

Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (citing Rhodes, 452 U.S.

at 347). These needs include "food, clothing, shelter, sanitation, medical care and personal safety." <u>Griffin v. Vaughn</u>, 112 F.3d 703, 709 (3d Cir. 1997).

As noted by defendants, it is clear that Manning simply brings a generalized overcrowding claim.  (Doc. 32, at 11.)  An inmate cannot sue for generalized grievances shared in a substantially equal measure by all or a large class of citizens. (Doc. 32, at 11, citing <u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208, 221-27 (1974).)  Specifically, "[t]he desire to obtain (sweeping relief) cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks." <u>McCabe v. Atchison, T. & S.F.R. Co.</u>, 235 U.S. 151, 164 (1914). Defendants are entitled to an entry of summary judgment on Manning's overcrowding claim.

> 2. <u>FTCA</u>

Under the FTCA, sovereign immunity has been waived, in limited circumstances, for claims for money damages against the United States for injury or loss of property caused by the negligent or wrongful act or omission of a federal employee. 28 U.S.C. § 2671, *et seq.*  A person may sue under the FTCA to recover damages from the United States for personal injuries sustained during confinement in a federal prison by reason of the negligence of a government employee.  <u>United States v. Muniz</u>, 374 U.S. 150 (1963).

Under the FTCA, the law of the place where an act or omission occurs is to be applied. 28 U.S.C. § 1346(b). Because LSCI Allenwood is in Pennsylvania,

Pennsylvania law applies.  Under Pennsylvania law, a plaintiff must prove the following elements to establish a prima facie claim for negligence: "(1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the harm in question; and (4) the plaintiff incurred actual loss or damage." Krentz v. Consol. Rail Corp., 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2006).

Because sovereign immunity can only be waived by the sovereignty, the circumstances of its waiver must be observed scrupulously, and not expanded by the courts.  Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir. 1994).  Defendant argues that Manning's FTCA claim is barred by the discretionary function exception, an important limitation on the FTCA's waiver of sovereign immunity codified at 28 U.S.C. § 2680(a).  There Congress provided that the provisions of the FTCA shall not apply to:  [a]ny claim . . . based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.  28 U.S.C. § 2680(a).  This limitation was imposed "to protect certain important governmental functions and prerogatives from disruption," Molzof v. United States, 502 U.S. 301, 311 (1992), and "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," United States v. Varig Airlines, 467 U.S. 797, 814 (1994); accord United States v. Gaubert, 499 U.S. 315, 323 (1991).  This exception "marks the boundary between Congress' willingness to

impose tort liability upon the United States and its desire to protect certain

governmental activities from exposure to suit by private individuals." <u>Varig</u>

<u>Airlines</u>, 467 U.S. at 808; <u>accord</u> <u>Berkovitz by Berkovitz v. United States</u>, 486 U.S.

531, 536 (1988).  Because of this and other limits, the FTCA provides no assurance

that persons injured by federal employees will be compensated.  <u>Dalehite v. United</u>

<u>States</u>, 346 U.S. 15, 17 (1953).

    While the plaintiff has the burden of demonstrating that his claim falls within

the scope of the FTCA's waiver of governmental waiver, <u>In re Orthopedic Bone</u>

<u>Screw Prod. Liab. Litig.</u>, 264 F.3d 344, 361 (3d Cir. 2001), " '[t]he United States has

the burden of proving the applicability of the discretionary function exception.' "

<u>Cestonaro v. United States</u>, 211 F.3d 749, 756 n. 5 (3d Cir. 2000) (<u>quoting</u> <u>Nat'l Union</u>

<u>Fire Ins. v. United States</u>, 1417 (9th Cir. 199l)) Courts apply a two-part test to

determine whether the discretionary function exception bars suits against the

United States.  <u>See</u> Gaubert, 499 U.S. at 323; <u>Berkovitz</u>, 486 U.S. at 536; <u>Varig</u>

<u>Airlines</u>, 467 U.S. at 814; <u>Dalehite</u>, 346 U.S. at 17. The Third Circuit sets forth this

two-part test as follows:

> Courts make two-part inquiries to determine whether the
> discretionary function applies in any particular case.
> <u>United States v. Gaubert</u>, 499 U.S. 315, 322–23, 111 S.Ct.
> 1267, 1273–74, 113 L.Ed.2d 335 (1991). First, a court must
> determine whether the act giving rise to the alleged injury
> and thus the suit involves an "element of judgment or
> choice."  <u>Id.</u> at 322, 111 S.Ct. at 1273 (quoting <u>Berkovitz v.</u>
> <u>United States</u>, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100
> L.Ed.2d 531 (1988)).  "The requirement of judgment or
> choice is not satisfied if a 'federal statute, regulation, or
> policy specifically proscribes a course of action for an
> employee to follow', because 'the employee has no rightful

option but to adhere to the directive.' " Id. (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958–59); see also Mitchell v. United States, 225 F.3d at 363; Cestonaro, 211 F.3d at 753.

. . .

Second, even if the challenged conduct involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. at 322–23, 111 S.Ct. at 1273.

> Because the purpose of the exception is to prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy. Id. (internal quotation marks and citations omitted). The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Id. at 325, 111 S.Ct. at 1275; see also Mitchell, 225 F.3d at 363–64; Cestonaro, 211 F.3d at 753; Sea–Land Serv., Inc. v. United States, 919 F.2d 888, 892 (3d Cir.1990).

Id. (internal quotation marks and citation s omitted).

Merando v. United States, 517 F.3d 160, 164–65 (3d Cir. 2008). If the challenged acts and omissions conceivably involve policy considerations and are discretionary in nature, they are immune from suit under the FTCA. See id.; Gaubert, 499 U.S. at 322–25.

In the matter sub judice, Manning asserts that defendant acted negligently in failing to provide him with a ladder to access the top bunk to which he was

assigned.  Defendant argues that although it is widely recognized that 18 U.S.C. §

4042 imposes a general duty of care, ordinary diligence, to safeguard prisoners, the

statute does not direct the manner in which the BOP should fulfill the duty.  (Doc.

32, at 16.)  Defendant then argues that "there was no statute or regulation regarding

whether ladders should be installed to access top bunks in the prison cells; such

decisions are made independently by administration of each prison.  Thus, this

decision clearly involved elements of judgment or choice and the first prong of the

Gaubert-Berkovitz test is satisfied."  (Id.)

Warden Strada declares that "there are no BOP rules, regulations or policies

that govern the use of ladders on bunk beds.  Such decisions are made

independently by the administration of each prison.  In the past, ladders have not

been used at the LSCI and I intend on continuing that practice.  Ladders present a

myriad of security concerns.  They can be broken apart and used as weapons; they

can be broken from the beds and used along with other ladders to assist in

facilitating escape; and they can create an obstruction in the cell should a forced

cell move be required."  (Doc. 32-3, at ¶¶ 4, 5.)  The decision not to add ladders to

the bunk beds clearly involved an "element of judgment or choice," as there are no

federal rules, regulations or policies dictating a course of action to follow.

Consequently, the first prong is satisfied.

As noted above, the second prong examines whether the discretion at issue is

the type the discretionary function exception is intended to protect.  The "focus of

the inquiry is not on the agent's subjective intention in exercising the discretion,

but on the nature of the actions taken and whether they are susceptible to policy analysis." <u>Gaubert</u>, 499 U.S. at 325.  Here, defendant agues that the decision concerning the use of ladders required consideration of inmate staff and safety. (Doc. 32, at 18.)  Defendant further argues that because correctional judgment could seriously impact the security and order of a BOP facility, the decision not to allow them in prison cells was susceptible to policy analysis.  (Doc. 32, at 18.)

The case of <u>Jackson v. U.S.</u>, Civ. No. 06-88, 2007 WL 2033902 (W.D. Pa., Jul. 12, 2007) (McLaughlin, J.) is offered in support of the government's position.  (Doc. 32, at 18.)  This case also involves a bunk bed that was not equipped with a ladder to access the upper bunk.  (<u>Id.</u> at * 2.)  While attempting to access his upper bunk, Jackson, an inmate at that Federal Correctional Institution at McKean, Pennsylvania, fell and hit his back and hip on a metal stool which was attached to a metal desk located in the cell.  (<u>Id.</u>)  He filed a complaint in federal court which included a claim that the United States was negligent "in failing to insure that the top bunk in the S.H.U. can be accessed in a safe and secure manner by utilizing a ladder." <u>Id.</u>  The United States moved to dismiss the claim on the ground that the claim was excluded from the FTCA's waiver of sovereign immunity by the discretionary function exception.  <u>Id.</u> at *6.  In considering the second prong of the test, the court found that it was beyond dispute that the decision not to add ladders to bunk beds was due to prison and inmate safety, and that this was "precisely the type of policy decision that is protected by the discretionary function exception." <u>Id.</u> at *9.  In arriving at this conclusion, the <u>Jackson</u> court relied on <u>Whitley v.</u>

Albers, 475 U.S. 312, 321-22 (1986) and Rhodes v. Chapman, 452 U.S. 337, 349 n. 14

(1981), both of which recognize the wide-ranging deference and discretion afforded

prison administrators in the area of inmate and institutional safety.  Id.  Defendant

argues that "in the instant case, the conduct at issue involved a virtually identical

exercise in judgment or choice as in Jackson, and the nature of the actions taken

were susceptible to policy considerations."  (Doc. 32, at 19.)  The Court agrees.  The

decision not to provide ladders for upper bunk access involves policy choices, which

the Third Circuit has cautioned that federal courts "should not second guess."

Mitchell v. United States, 225 F.3d 361, 364 (3d Cir.2000).  Therefore, the second

prong of the Gaubert-Berkovitz test is also satisfied.

Accordingly, defendant is entitled to an entry of summary judgment on the

FTCA claim as this Court lacks subject matter jurisdiction over the claim pursuant

to the FTCA's discretionary function exception.

**III.  Conclusion**

Based on the foregoing, defendants' motion to dismiss will be granted in part

and denied in part and the motion for summary judgment will be granted.

An appropriate order will issue.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       March 30, 2012

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DWAYNE MANNING,** | : | **CIVIL ACTION NO. 1:11-CV-0293** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **OFFICER FLOCK**, et al., | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 30th day of March, 2012, upon consideration of defendants'

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and motion for

summary judgment pursuant to Federal Rule of Civil Procedure 56(b) (Doc. 11), it is

hereby ORDERED that:

1.    The motion to dismiss is granted in part and denied in part.

2.    The motion to dismiss is GRANTED with respect to the following
      claims:

      a.    The <u>Bivens</u> monetary claims against all defendants in
            their official capacities are dismissed.

      b.    All claims against defendants Norwood and Watts are
            dismissed.

      c.    The FTCA claim is dismissed against all defendants
            except the United States.

3.    The motion is DENIED in all other respects.

4.     The motion for summary judgment is GRANTED.  The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

5.     Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).


  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge